Our next case for argument is 24-1543, Hamill v. Collins. Ms. Burbank, please proceed. Good morning and may it please the Court. The Appeals Modernization Act fundamentally altered the procedure for Veterans' Benefits Appeals. In its changes, the statute abrogates the existing common law doctrine of implicit denials. Because veterans must make more choices, more specific choices, at the point of the initial decision about whether and how to appeal a decision, they need more information to have sufficient notice and a fair opportunity to be heard. So let me ask you a question. The new statute, 5104B, which articulates, I think it's seven, is it seven different? Yeah, seven different things about which the veteran has to get notice, right? One of the problems I have with your argument is that you think this veteran doesn't have an appealable decision to the Board until it's gotten all seven. Is that fair? I think, Your Honor, it has to have enough notice that the veteran, the claimant, can understand all seven. It doesn't have to be seven different. I don't understand. This is what I'm confused about. Suppose that only one of them was missing, of the seven. You can even pick which one, an explanation of how to obtain access to evidence used in making the decision. Suppose that's the only thing missing from a decision. Are you saying that the veteran does not, at that point, have a decision which it can appeal to the Board and say to the Board, I have a decision. They told me the claim they're adjudicating. They told me how they're adjudicating. They told me what evidence they used, but they didn't tell me this, so send it back for a fuller analysis that complies with all seven requirements. Are you saying that the veteran does not have that option of going to the Board under those circumstances? I think I understand, Your Honor. No, that is not Mr. Hamill's position. But, Ms. McGuinn, it does seem to be, because Mr. Hamill's position seems to be that there isn't an appealable Board decision unless all seven of these are satisfied. And I am sort of surprised if that's what you're asking for, because that doesn't seem to make sense.  That surprise makes sense, and Mr. Hamill is not asking for that. When there's an explicit decision and there's something wrong with the notice, this is very common. You appeal to the Board. The Board says there's 5104 deficiencies, remands it back. That's totally fine. It's not as if all seven factors in AMA 5104B are equal. That's right, Your Honor. Some could be implicitly addressed. It sounds like you're conceding. I think that's right, that when there's an explicit decision and you can extrapolate, for example. Yeah, which factors need to be explicit in Mr. Hamill's view? So particularly, there has to be enough so that a veteran can understand what evidence and legal structure the Secretary used, and again, in the case of a denial, what elements were not satisfied leading to the denial. So here, Mr. Hamill has a request to reopen. There is, as Judge Jacobs said in his dissent, there's no hint of any explanation of whether the VA actually recognized that as a request to reopen, whether there was a . . . I think, and I should stay away from saying what you're implying, but factor one under the new statute is identification of the issues adjudicated. Would you say that at minimum, at least that needs to be explicitly identified in the decision in order for, in a post-AMA world, there to be an appealable order? Yes, Your Honor. The veteran has to understand which issues were adjudicated, and if that's not in the explicit decision . . . You're starting to say something a little different. If a veteran would understand, that sounds just a little bit different than what Judge Stark's question posed, which was, does the identification of the different issues or claims need to be explicitly stated in the decision? And then you came back and said, well, as long as the veteran understands what the issues . . . I mean, your answer is yes. It's got to be in there, right? Yes. The answer is yes. I wanted to be clear that I'm not asking for sort of a magic words analysis of, you know, does it use a separate section of its decision to say, here are the issues adjudicated, list 1, 2, 3, 4, as long as it's in the explicit decision. It has to be there. It has to be explicitly somewhere in there. It has to be there somewhere. You say, it has to be there. What is the it? B1, the identification of the issues adjudicated. So in answer to that question . . . So in this constructive, or not, COD, whatever those words are. Director of discharge, yes. Yes. That has to be in there somewhere. It has to be in there that that was an issue that they were adjudicating. Even if it isn't maybe fully fleshed out, even if maybe the other seven factors, six factors aren't met, if at least it's clear the board adjudicated that issue because they expressly said so, then he can go to the board and say, inadequate decision, didn't meet the notice requirements, go back down and address the other six requirements, but at least notice that he has, that there is an issue that the board addressed. Is that fair? You should say yes.  I'm just making sure that there's no . . . Yes, Your Honor, that is fair. In this circumstance, too, there's the problem of the reopening. So it's not just that the COD issue was addressed. Mr. Hamill needs to know, did you reopen the claim and address it on the merits, or did you say there was no new and relevant evidence and that's the decision? So the identification of the issue addressed, whether it's COD or request to reopen, yes, there has to be that identification, and there's no identification here. What I'm understanding is on the list of seven, from that answer, you're saying it's not enough just to explicitly check the box for number one, identification of the issues adjudicated. You say explicitly at least some other factor of the remaining six also has to be identified. Maybe it's number five, the elements that were not satisfied leading to the denial? Yes, Your Honor, number five was exactly the one I was going to go to next. So one and five have to be explicit. And just by the way, that means even if every reasonable person reading the board decision would know that one and five were decided, if it's not explicitly said that one and five are done, then you don't have an appealable order, right? That's your position. I'm not sure of the hypothetical in which you could understand those things without it being explicit. Let me give you a hypothetical then. What if a claimant seeks an increased rating for some disability and also is claiming a TDIU? Right. And then the VA comes back and says, okay, Mr. Claimant, we had a medical examination done and we've looked at your condition and we just don't see any evidence for any increase in your rating. And so your current rating is at 40% and your request for an increased rating is denied, period. The decision doesn't say anything about TDIU and doesn't give any reasoning for why a TDIU itself expressly was denied, but all the reasoning that was provided in the RO decision, including the weighing of the evidence and everything else with respect to the claim for an increased rating is all there. It's all satisfied. Would you say, aha, the TDIU claim is still out there pending? We don't have a final decision on the TDIU, or would you say, just as a matter of pure common sense, of course the TDIU claim was also denied once the VA denied the claim for increased rating? If the decision rationale, for example, the reasons why the increased rating is denied also identifies the elements that aren't sufficient for the TDIU because they're the same, then I think there may be space for saying, no, we handled the entire claim. Wait, wait, wait, stop. Just to stop. So are you, you're saying some conflicting things and I just want to be clear about what you're saying. So are you saying that a veteran would have notice, even now, even now when this notice statute exists and says what a board decision has to have in it to be a final board decision, you're saying a veteran with no lawyer, no law, this is an unsophisticated veteran who doesn't have a lawyer, is going to know that one of his enumerated claims was denied even though there's no actual mention whatsoever anywhere in an opinion of that particular claim? I may have misunderstood Judge Chen's hypothetical. I thought there was sort of a, there was no explanation of what was going on. But if there's no mention at all of TDIU, when there was a claim for TDIU and there's no indication that they ever reached the TDIU issue under 5104. Not no indication they ever reached it. So you've got to be precise. There was no discussion of the, that this was an identification of the issues that TDIU is not, if TDIU is not identified as an issue adjudicated in the explicit decision. If there is not identification of the elements of the TDIU denial. Yeah, I'm just not going to agree with you on all the other stuff. The elements, I'm not even going to agree with you on number five. And here's why. I think it, suppose the board says we, even in this case, we'll take your exact case. Suppose the board said, and we've also considered your COD requests and they are denied. With no explanation. You don't have, you haven't satisfied, the board hasn't satisfied number five. You surely have an appealable decision to go to the board and those circumstances, and you'll say to the board, they didn't meet the notice requirements. I have no idea why they denied my claim. The fact that it was mentioned, the fact that the board is saying we're denying it, it seems to me enough to put the veteran on notice, they now have an appealable issue. Yes, absolutely. Because that's an explicit decision. And now we're just in a, you fail to comply with 5104. It's an appeal to the board. Well, if you're agreeing with that, then I think your position is that the explicit decision, the only one of these seven factors that needs to be explicitly on the face somewhere in the decision is number one. And all the others, it'd be better if they're there, but maybe if you reasonably understand them, maybe various different. If you have that explicit, if you have number one explicitly, the rest is just an appeal to the board. That's right. In the facts of this case, if the discharge status item was mentioned somewhere in the RO's decision, but then there's no actual formal commentary that, oh, by the way, your request for an upgrade of discharge status is denied, just the fact that it was identified, that would satisfy factor one of new 5104. And that would be enough to tell the veteran, okay, not only do I have an appealable decision on my service-connected claim, I also now have an appealable decision on my discharge. Is that? When you say mention, Your Honor, if it's identified as one of the things being adjudicated, then yes, that would be enough. That doesn't happen here. Do you mean if it's in the background section, oh, there was this claim and never mentioned again, maybe not enough, but what if at the tail end of the thing it says, and we have rejected all of the veterans' claims, then even though it's not mentioned in the we've rejected all the veterans' claims, it was mentioned up above, so it was clearly on the DOD claim, they're saying we rejected all of the claims, like that would be enough, wouldn't it? Right, Your Honor. If there's a list. And to be clear, let me, I didn't let you answer it. No, I was answering, yes, if there's a list of here are your claims, and then at the end it says, and we're rejecting everything else, that is explicit. But to be clear, you're not saying that that would be okay. That would still fail to comply with the notice requirement, but what it would do is trigger for the veteran, go to the board now and complain that they didn't do, fulfill the notice requirement. Right. You have an explicit decision that you can appeal to the board and one of your arguments to the board would presumably be a 5104 deficiency. I want to return to my TDIU hypothetical. I mean, in my example, in which the RO decision gives, you know, a full evaluation of the increased rating claim, and then gives all the detailed reasons for why the VA is denying that claim. And of course, all of the reasoning and logic behind the denial of that claim would necessarily equally apply to the denial of a co-pending TDIU claim. Initially it sounded like you were saying, well, maybe that's a circumstance where you don't actually have to say the magic word TDIU in the decision. But are you actually, I want to get your final answer on that because that is kind of a classic example of where the implicit denial rule would come into play. It's sort of like, at best, there's just harmless error here because it's so painfully clear that all of the reasoning and logic would be identical to the denial of the TDIU claim. Right. So, Mr. Hamill's argument is that 5104 does require the explicit identification of the issues adjudicated, and in your hypothetical, that is not sufficient for an implicit denial. However, as an alternative, you know, this court can say, this is not a TDIU case. We don't want to go that far. This court could rule, in the alternative, that implicit denials under the AMA cannot extend to whether a claim has been reopened, for example, right? You need to have enough to understand whether, in fact, that claim was reopened or was... That makes no sense. I'm sorry. But the idea that we could somehow split the baby and say implicit denial doesn't apply when it's asked for reopened, but it does apply when you're asking for an increased rating and nothing is mentioned. The fact... If you base... If you have grounded your position in the AMA and the statutory change, there is nothing I see in this statutory language that supports the split the baby approach you just tried to hand to Judge Chen, which makes no sense for me. Your Honor, let me... By the way, that's a friendly question. Let me try to explain. Your Honor, I certainly do not mean to fight with friendly hypotheticals. I was simply saying, I understand that this is not a TDIU case. And the facts of this case, they're so devoid of similar reasoning in all of the seven factors, you don't have to go that far to understand that Mr. Hamill did not receive an implicit denial in May 2021. We probably ought to hear from the judge.  Thank you.  Good morning, Your Honors. May it please the court. Before I turn to the question of the implicit denial post-AMA specifically, I do want to highlight the fact that there are multiple alternative paths to affirmance of what the Veterans Court did here that don't traverse through the implicit denial question, including both mootness and the alternative adequate means under mandamus. And so if the court didn't want to address the implicit denial rule at all, it can still affirm the decision of the Veterans Court. I'm just curious, all of this is really, the backdrop is all these veterans trying to get a new decision on their discharge status. And the VA expressly telling everyone, we're working our way through making sure all these different people get their, you know, discharge status review with a decision on that. Where's that? So, I think both, right? So, Mr. Hamill originally got some explicit denials that he didn't appeal. And then in 2024, there were the liberalizing changes in the regulation in terms of the circumstances in which when you have an other than honorable discharge, the VA will nevertheless Right. So, a year or more has passed and where are we now with that work that the VA has promised to do? So, I'm not sure how many people have requested reexamination. So, the regulation when it was liberalized, it specifically said that if you want to come back and sort of ask us to revisit your character of discharge determination in light of these liberalizing changes, we will do that. So, I don't have off the top of my head the numbers of how many people have asked for that. Just like a housekeeping matter, sort of. So, whatever, if we do decide this implicit denial question, this only affects post-AMA cases, right? So, implicit denial has existed all the way prior to the AMA and the AMA is relatively recent and so, let me give you, for example, if we get some veteran that says, oh, my claim from 1960 that you didn't expressly address, now I'm going to say it wasn't implicitly  That's not going to be affected by anything we do today, correct? Because the AMA did not expressly indicate that it is retroactive and that the veterans should have always gotten this level of notice. That's right. I think that even if the court were to abolish the implicit denial rule post-AMA, that would maintain sort of, so long as we have legacy claims, the legacy rules apply. Now, I don't think the court should abolish the implicit denial rule post-AMA either and I think sort of, in terms of the argument we heard this morning, it was a significant retreat from the argument we saw in the briefs and one that really effectively accepts the implicit denial world and just challenges the facts of this case and the application of those. That's for sure. I think, yes, maybe their position today is a little different from what they briefed, but their position, quite clearly, would be a dramatic haircut on the implicit denial rule. I mean, if the first element of new 5104B has to be satisfied in every decision in order for that decision to be an appealable decision, that's pretty close to knocking out the implicit denial rule. I agree with that. So, I don't think we can say here today together that, oh, this is just an application of law to facts now. Well. It's what I heard you say 30 seconds ago. Sure. I think if their position, well, two things. I think the court should reject the position. We know that already. What's the second thing?  But I think, sort of, in the questioning back and forth, the answer sort of kept going back and forth between it needs to be explicit and the veteran has to understand and the veteran would only understand if it's explicit. And so, with the implicit denial rule, it has always been a notice provision and it has always been context specific in terms of what the veteran would actually understand. And is there enough in the decision that the veteran, a reasonable veteran, would look at it and know that VA has decided not to give you what you want? Isn't it clear based on this, the new 5104, that what you just described would absolutely not satisfy the seven notice points that Congress now requires for decisions or whatever, VA decisions to have in them? Yes, and I think that's always been true. The implicit denial rule has always sort of accepted as final appealable decisions, even if you don't meet necessarily all of the elements that 5104B would require for an explicit decision. There are more boxes to check now, but the fundamental equation sort of doesn't change. That if you, and there's sort of really no reason to split B1. You don't think that Congress, as evidenced by all of the history that led up to this and the adoption of 5104, was trying to make it clear that veterans must be given more and clearer notice by the VA when they make decisions adjudicating their claims? I think they do, but I think that sort of conflates whether or not a decision is correct with whether or not it's appealable. And so the implicit denial rule gives you an appealable decision. When it's clear that VA has decided not to give you what you want, it puts the ball back in your court. But nowadays, now, the old rule didn't, the old version of 5104, didn't say the notice must identify the issues being adjudicated. That language wasn't in the old rule. That's correct. Okay, so nowadays, you have, I mean, and this is a non-adversarial system with an often, not always, but unsophisticated from a legal standpoint, veteran who's applying and dealing with the VA. If the veteran ever gets to see 5104 and says, oh, well, if the board issued a decision on my claim, it had to have identified the issue adjudicated because that's what the rule requires. And so my issue adjudicated now, that's what the rule requires. My issue adjudicated isn't in this claim, so I can't go to the board now. Why don't you think possibly when dealing with an unsophisticated veteran, they're not going to now, the implicit denial rule has sort of been changed by Congress because the veteran, if he even looks at the law, is going to think this decision didn't decide my case because they have to mention it expressly now, according to the law, and they didn't. So I think two things on that, Your Honor. One, that doesn't differentiate B-1 from B-2 through 7. And so if we accept the world that you can have a final appealable decision and that is flawed under the rest of 5104-B, and that you can then raise that on appeal and say, hey, you haven't given me all of the information that Congress says I'm now entitled to have, I don't see any basis to differentiate B-1 from B-2 through 7 on that. You don't really? Because that kind of seems a little bit, I can. If I'm told no to something, I understand the answer is no. I may not know the reasons why the answer is no, but I understood I've been told no. I might have arguments about why I should have been told yes, but at least I know I've been told no. And so I think that the implicit denial rule already gets at that, right? It is a fact-bound question of, is there sufficient notice in the decision that a reasonable veteran would understand that he's been told no, even if the words sort of explicitly are not there? What if the AMA could be read to say, no more guessing games. That we're out of the business of having an implicit denial rule, and we're not going to leave these veterans in a position where they have to deduce what the decision encompasses. And we do need, in fact, to see some actual clarity, not divine clarity, but actual clarity right there in the four corners of the RO's decision. So therefore, you need to actually mention the assorted different claims that are being decided in the decision. That wouldn't be an unreasonable choice by Congress, right? Yes, and I think the better reading of the AMA is to preserve the implicit denial rule. And the reason for that is because otherwise, so let's say you have a decision, and it is obvious in this case, for example, the Veterans Court found that it was obvious there was only one way to read this decision. And that was that they were not revisiting the character of discharge question. So you know that VA is not giving you what you want. And then, but it didn't say so explicitly. We don't have the explicit reference to a character of discharge. The options are twofold. You can either, if it's a final appealable decision, you get to go through the appeal process. There is structure and procedure where you can go back to VA and say, hey, you're not giving me what I want, but you haven't fulfilled all of the rules. You haven't given me all the information that I need. Here's all the reasons why you're wrong. That's what the implicit denial rule allows you to do. Without it, they're trapped in limbo. You don't have a final appealable decision. And you're stuck either writing letters to VA to try to get them out of them, or you have to go to mandamus. And so there's clarity with the requirement that element one now of 5104 has to be complied with every single time. Because then you know you don't have a decision on a particular claim, because it was mentioned in the decision. But you're still trapped in limbo. And so then it's incumbent upon the VA to, quote unquote, do the right thing, which is to actually answer for every single different claim that is submitted by the veteran, rather than sub salientio denying claims left and right. Well, I don't think they're sub salientio denying claims left and right. We are, as the implicit denial rule has always said, that there has to be enough explicit things that would put a person on reasonable notice that VA is also not giving you the benefits of the implicitly denied claim. But fundamentally, I think, yes, it's always better if VA does everything correct and does it right every time. Well, here, let me ask the question differently. What happens to the VA if this court takes away the implicit denial rule? Is it going to be mass hysteria? I think it would be really, for practical reasons, problematic, given the continued sort of informality that the system intentionally contains. So the implicit denial rule originally grew out of the implicit claim doctrine. But the new rule, you agree the AMA requires all of this notice to be given. So the implicit denial rule is just us letting the VA not do its job. Because all of these things are required. The VA isn't doing... Don't you agree that the VA has not satisfied its statutory obligation if these seven criteria are not met? Yes, but I don't think the implicit denial rule is letting the VA not do its job. I think what the implicit denial rule does is it allows veterans to continue pressing their claim with VA and to ultimately get all of the statutory mandated notice. I think Mr. Hamill's argument ultimately conflates a correct decision that withstands appellate review with an appealable decision that you can take through appellate review. I don't think they're conflating a correct decision with an appealable decision. I think they are talking about an adequate decision, an adequately written decision with notice of an appealable decision. And so those two things are much more closely related than a correct on the merits based decision, as you would put it. Sure, but I think the implicit denial rule already takes account of the adequate to put the veteran on notice decision. That is the basis for the implicit denial rule, that it's a factual determination of whether there is enough in this particular decision to put a veteran on notice. And it could be that there are circumstances where it wouldn't be, and then the implicit denial rule doesn't apply. But the sort of disagreement, I think, that sort of we now have with Mr. Hamill and the sort of the tension that we're playing out here. I found the post hoc application of the post denial rule, implicit denial rule in this particular case, quite peculiar in how it stood apart from this court's familiarity with the implicit denial rule, which had always been used in the context of two claims that are very factually closely related. And the example of a claim for an increased rating and then an implied claim for TDIU. Those are factually very closely related. And my understanding is that is the kind of instance that we have seen where we said that's like an appropriate application of the implicit denial rule. Here we have two very different kinds of requests. One for an upgrade of discharge status and the other service connected benefits. And so I don't think this court has ever seen disparate claims like that where the decision on one of those disparate claims has been touted as being an implicit denial of the other disparate claim. Can you think of a federal circuit opinion that has facts even remotely like this one? So I think factually, I agree with you that most of the other previous examples have been sort of. I think the answer is all, not most. Into different. I think that's right. But the way that the doctrine has been talked about is that it has to be that. I think the Steele case talked about this most recently that the finding or holding that is explicitly made has to be incompatible with sort of a grant of the other claim. And so here, what the Veterans Court held, and I think ultimately, obviously, once we get to sort of an application of a lot of that question, that is unreviewable. But that the appendix page six, that the May 2021 decision more than alludes to the relationship, it turns on the fact of the COD. And so when we look at the decision here, it specifically mentions the prior character of discharge determination and the evidence that was considered. It only looks at the Chapter 17 benefits, which you only ever get to if you have a dishonorable character of discharge determination. That's because he already had a dishonorable discharge determination. He was saying, I want you to reopen and look at that again. So of course, the benefits piece, if you don't look at the COD question, the default is he's in constructive dishonorable discharge status. So of course, they would only go on to decide the rest if they were oblivious to the COD thing. Oblivious. If you talk to the board, sorry, my bad, the opinion they wrote would look exactly the same as what we got. There's no difference. There's nothing in the opinion that's directed to that issue. So I don't think I agree with that, Your Honor, because the board couldn't be oblivious to the character of discharge issue. Well, they knew the discharge status. There's no suggestion in the decision that they actually considered a revisiting of the discharge status. I mean, you're saying they necessarily must have, because they only gave a certain type of service connection evaluation. But that equally could be based on the fact that they were just oblivious to even considering the question of whether it was appropriate to revisit the discharge status. Well, I mean, In my view, there's two equally plausible readings of what's going on here with respect to the discharge status. I'm not saying that your interpretation is completely wrong, but at a minimum, it's ambiguous. And that's why I'm wondering, huh, is this the right way to say, well, of course it was implicitly denied because necessarily they considered the issue and dismissed it, when actually it's quite ambiguous. I understand we're talking about application of a lot of fact right now, but at the same time, when we're dealing with very disparate claims like this, it really makes one wonder if people should even be entertaining the application of implicit denial rule at all. I mean, what I will say is that I think it's, what's not ambiguous is that they were not going to upgrade his character of discharge. And therefore, from a- Well, they didn't. We know that. I mean, he's actually gotten it since then. Mr. Hamill now has benefits. He went back to the military for his upgrade. But I think what is unambiguous in this decision and what the board found was that the only way to read this decision was that they were not going to give him a different character of discharge. And so that put the ball back in his court. And if he disagreed with that decision, he could then appeal it and raise all of the issues that he raises now about the sufficiency of the notice. And he could take it, for example, to higher level review and ask those questions there. A different question. It looked like you were about to respond to it earlier. In terms of the purpose of the implicit denial rule, you seemed to be, you were about to get to the point that, well, there are so many implicit claims that are part of the system or informal claims that are hard to read or hard to discern. And so in that way, there are, quote unquote, hidden claims running around throughout the VA. And so therefore, the implicit denial rule is an important feature for the VA to have to address implicitly filed claims. Was that what you were trying to say? I think they're related. And so this is important to understand because, just because veterans have the opportunity to submit claims implicitly, I'm not sure that means what's good for the vets is also good for the VA in this vet-friendly claimant system. So I just want to ask you the question. I also want you to be careful in how you respond to suggest that, oh, of course, we can have, we need an implicit denial rule so that we can clean out implicitly filed claims. Right. And I don't think I would go, I would not go that far. What I was saying is that if you trace the origins of the implicit denial rule, it comes out as an outgrowth of the implicit claim doctrine. So it's sort of named by name for the first time explicitly. And I think Deshotel, but if you look at that case, what the court says is we're just applying Andrews. And if you look at Andrews, Andrews was itself just applying Roberson, which was the recognition of the implicit TDIU claim. And so I do think they are sort of related to each other in that, given the sort of informality that we intentionally maintain in the VA system, that sort of a practical backstop that allows for some finality and repose is that if everybody understands sort of that, yeah, we've denied your claim, the ball's back in your court, you now sort of have to decide whether you're going to keep pressing it forward or not. Obviously, veterans are not required to appeal adverse decisions. Mr. Hamill didn't, his first two explicit COD denials. That sort of is a practical necessity, I think, that is a backstop to the implicit claim system and the lack of formality. Okay, counsel, I think that we should, we're way over time. So let's give her some rebuttal time, please. Thank you, Your Honor. Your Honor, I think the discussion of no more guessing games is exactly correct. The AMA creates a system where both veterans and the VA have to be much more explicit about what they're doing. And while a veteran can still have implicitly raised claims, respond to the government's argument that the old 5104B, you know, did have certain requirements for an adequate, proper decision. And the implicit denial rule basically runs over that to a certain extent. You know, the requirement that you give a statement of the reasons for the decision, and there is no obvious statement of reasons in an implicit denial. So why, just because we're, you know, decorating the 5104B tree with more ornaments now, post-AMA, does that necessarily mean, oh, okay, we forget about the implicit denial rule? Yes, Your Honor, the old 5104B required notice to be sent and a reason for the decision, but no explicit discussion of, here are all your claims that we're adjudicating right here, in the explicit way that 5104B currently does. This court's decision in Steele is pretty instructive in explaining, under the legacy system, you still have an explicit decision. And that explicit decision, those reasons that are explicitly given have to be enough so that the veteran understands the explicit decisions and rationale are also understood to extend to the implicitly denied claim. And that's at page 1361 of the decision in Steele v. Collins. Now, as Your Honor stated, this case is really about the AMA. So anything, any cases that are under the legacy system, this case does not reach that, right? Holding in Steele is still . . . So you agree with what I asked the government, which is no matter what we do with this case, it is not going to affect the vast majority of cases, you know, where you have board decisions that go back to the 1960s that we still sometimes see being challenged for various reasons, that nothing prior to the AMA will be implicated by this, and that even if we were to eviscerate the implicit denial rule, that would only be a forward-looking thing post-AMA. That's correct, Your Honor. What I take to be your refined position this morning, maybe not your preferred position, but at least a position you're offering us, is that we only need to make a modification to the implicit denial rule to require all decisions to explicitly address the new factor 1 in 5104B. I take that as your, at least an offer you're making to us. The government says there's no textual basis for that, for us to distinguish and call out, you know, number 1 as opposed to 2 through 7 in the statute. Do you have any response to that statutory textual argument? Yes, Your Honor. The implicit denial doctrine, by definition, does not deal with flawed decisions. It's dealing with non-existent decisions. So as soon as you get that identification of the issues adjudicated under B1, you now have an explicit decision that can be appealed for being flawed, which you wouldn't necessarily get with if it just lists, here are all the laws that we use to make your decision, right? You do need to understand explicitly what issues have been adjudicated. Okay. Thank you, counsel. We thank both counsel. This case is taken under submission.